**UNITED STATES of America,**
**Plaintiff,**

v.

**The INTERNATIONAL LONGSHORE-**
**MEN'S ASSOCIATION, AFL–CIO,**
**et al., Defendants.**

**Civ. A. No. 2897.**

United States District Court,
S. D. Georgia,
Savannah Division.

Dec. 6, 1971.

**1135**

J. Wiley Ellis, Adams, Adams, Brennan & Gardner, Savannah, Ga., for Southeast Maritime Co.

Bobby L. Hill, Savannah, Ga., Fletcher N. Farrington, Hill, Jones & Farrington, Atlanta, Ga., for Locals 1414 and 1475.

## ORDER ON MOTION OF LOCALS NO. 1414 AND NO. 1475 TO VACATE RESTRAINING ORDER

LAWRENCE, Chief Judge.

This is an action by the United States to enjoin the defendant Unions from continuing or engaging in a strike in the maritime industry of the United States. It is brought under 29 U.S.C.A. § 178 (Labor-Management Relations Act) upon the direction of the President following a report from a Board of Inquiry which found that the work stoppages by longshoremen in various ports, if continued, will so disrupt domestic transportation that the national health, safety and economy will be adversely affected.

Similar actions were brought by the United States in other district courts. On November 26, 1971, I granted a temporary restraining order. A hearing on the injunction was assigned for the 29th. At that time the two Local Longshoremen's Associations moved to dissolve the restraining order on the ground that no strike was in progress at Savannah and that there would be none as long as the preliminary injunction is in effect which was granted on November 17, 1971, as a result of litigation instituted by the National Labor Relations Board in the District Court for the Middle District of Florida pursuant to 29 U.S.C.A. § 160(l).[1] The two Savannah Locals were defendants along with other unions in that action which involved a charge of unfair labor practice in engaging in a strike in support of striking New York longshoremen.

R. Jackson B. Smith, Jr., U. S. Atty., Augusta, Ga., for plaintiff.

[1] Judge Krentzman found that the defendant Unions had violated the secondary boycott provisions of the National Labor Relations Act and that the strike had resulted in the closing of the ports of Tampa, Jacksonville, Savannah, Charleston and Georgetown. The District Court made findings of fact, including a finding that "it may fairly be anticipated that, unless enjoined, Respondent Locals will continue or repeat the acts and conduct. . . . "

Since the hearing in this Court on November 29th Local No. 1414 has filed a written motion to dissolve and dismiss on the ground that "it is not engaged in a strike, is not threatening to strike and in fact is supplying a full complement of longshoremen upon request of members of the Savannah Maritime Association, also defendants in this action." In support of this contention the Locals presented testimony at the hearing to the effect that there was no pending or impending strike at Savannah and that there would be none as long as they were enjoined in the Florida proceeding. The complaint alleges that the strike commenced at Savannah on October 1st and that it "still continues." There is no strike here and the Government's allegation in that respect is wholly unsupported.

According to testimony offered by the Locals, negotiations are in progress as to a labor dispute. This has reference to the making of a new contract. The previous agreement expired on September 30, 1971. There have been off-and-on negotiations since that time.

How does all this affect the right to injunctive relief by the United States in this case? Under 29 U.S.C.A. § 176 the President of the United States may appoint a board of inquiry to inquire into the issues whenever in his opinion a threatened or actual strike affecting an industry or substantial part thereof engaged in transportation or commerce will, if permitted to occur, or if continued, imperil the national health or safety. Upon receipt of a report thereon he can direct the Attorney General to petition any district court of the United States to enjoin such threatened or actual strike if it produces such result. 29 U.S.C.A. § 178. The court may grant an injunction effective for a period of eighty days during which the parties are admonished "to make every effort to adjust and settle their differences." 29 U.S.C.A. § 179. The purpose and function of the injunction is, of course, to preserve the *status quo* during the "cooling off" period.

It is likely that the eighty-day waiting period will have expired before the Tampa injunction is dissolved. Of course, that is the business of the District Court for the Middle District of Florida and not mine. A hearing on the charges against the defendant unions as to unfair labor practices is scheduled at Tampa on December 13th next, pursuant to the provisions of 29 U.S.C.A. § 160(*l*). It will be conducted before a trial examiner and the parties have 35 days in which to brief him on the issues. The examiner thereafter makes a ruling which goes to the District Director who rejects or approves same and enters a decision. Only then would the injunction in the district court expire by operation of law.

The scope and extent of the injunction granted by Judge Krentzman is highly relevant. His order does not appear to interdict *all* strikes by the defendant unions. It enjoins only what the National Labor Relations Board contends to be unfair labor practices, that is, strikes in furtherance of bargaining demands by *other* labor organizations. As I read it, a "legal" strike by the Savannah Locals is not enjoined by the Tampa order. It does not restrain a strike growing out of a labor dispute directly between the Locals and the employers of the longshoremen.

On November 25, 1971, pursuant to §§ 176–178, President Nixon directed the Attorney General of the United States to petition in any District Court having jurisdiction to enjoin the continuance of strikes at the ports on the Atlantic and Gulf coasts. "In my opinion," said the Chief Executive, "these unresolved labor disputes have resulted in strikes affecting a substantial part of the maritime industry of the United States, an industry that is engaged in trade, commerce, transportation, transmission or communication among the several States and with foreign nations. These strikes, if permitted to continue, will imperil the national health and safety."

■■ The exhibits to the complaint convincingly demonstrate that a national

emergency existed and exists in the maritime industry.[2] A statute designed to alleviate threats to the nation's safety and health is not to be parochially or narrowly read. The members of Locals 1414 and 1475 went on strike on October 1st. They did a more effective job in bottling up the port than a different Union was able to accomplish by naval blockade in the 1860's. The tawny Savannah was drained of its shipping. The port is now open. But not through voluntary action by the Locals. The longshoremen went back to work solely because of an order of a different court granted under different legislation. But for it they would still be on strike. The fact that they are under an injunction elsewhere does not preclude injunctive relief under the Taft-Hartley Act in a proper case. And this is one.

That Act authorizes injunctions against "threatened" strikes which produce a national emergency. A threat may exist even though immediate power to carry it out is lacking. It does not have to be announced or formally communicated. The defendant Locals do not say that the strike will not be resumed. They only say that it will not be resumed so long as the Tampa injunction is in effect. Whether or not I think there will be no resumption of it within the eighty-day Taft-Hartley period is beside the point. Such a consideration goes only to the exercise of discretion as to injunctive relief by a court of equity. I agree that to grant a preliminary injunction under § 178 may be neither needful nor necessary. However, if the right to such relief exists under the statute, this is a proper case for granting it. The defendants, Locals No. 1414 and 1475, and their officers, employees, agents and all persons in active concert are enjoined from resuming, engaging in or taking part in any strike or lockout in the maritime industry and from the acts set forth in the temporary restraining order of this Court dated November 26, 1971, during the effective period of such injunctive relief. This will send the parties to the bargaining table.

Up to this point there has been no mention of the International Longshoremen's Association (AFL–CIO) which is likewise a defendant in this case. The Association was served but made no appearance at the hearing on the rule to show cause. The brief on behalf of Local No. 1414 suggests that if the International Association is an autonomous organization and has the power to order dock workers in all ports back to work, the proper jurisdictional forum to obtain relief against it is the Southern District of New York. I am inclined to agree. The record before me is silent as to the relationship of the International and its locals. In this posture of the case I will not grant a preliminary injunction against the International Longshoremen's Association (AFL–CIO) but will extend and keep in force the temporary restraining order of November 26, 1971, for an additional period of ten days from this date in respect to such defendant.

2. The brief of the Government states: "On July 1, 1971, 15,000 members of ILWU went on strike at ports in California, Washington, and Oregon. At midnight, September 30, 1971, approximately 45,000 members of the ILA went on strike in the Atlantic and Gulf ports. There have also been substantial stoppages in the Great Lakes. The impact of the strikes is to interfere with transportation throughout the country. The import and export of commodities interrupted by the dock strike included processed food products, textiles and apparel, motor vehicles and equipment, plastics and synthetic materials, primary iron and steel, chemicals, primary non-ferrous metals, construction, mining, oil field, machinery, and equipment, and radio, television and communication equipment."